WATERS AND WATER RIGHTS The Oklahoma Water Resources Board cannot, by virtue of Executive Order establish and administer comprehensive rules and regulations pertaining to flood plain management in the State of Oklahoma, or to require other agencies to comply with same. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following questions: "1. Can the Oklahoma Water Resources Board, pursuant to an Executive Order, establish and administer rules and regulations pertaining to flood plain management, and require other State agencies to comply with such rules and regulations? "2. If the first question is answered in the affirmative, do either of the attached draft Executive Orders meet the requirements of law?" Any examination of the scope of the powers vested in the Governor of the State of Oklahoma must begin with Article VI, Section 1 of the Oklahoma Constitution, which provides: "A. The Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction, Chief Mine Inspector, Commissioner of Labor, Commissioner of Insurance and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books and papers at the seat of government, and shall perform such duties as may be designated in this Constitution or prescribed by law. . . ." Article VI, Section 2 provides for the supreme power to be vested in the Governor as follows: "The Supreme Executive power shall be vested in a Chief Magistrate, who shall be styled 'The Governor of the State of Oklahoma.' " Additional duties and authorities of the Governor are provided in Article VI, Section 8 as follows: "The Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he shall be a conservator of the peace throughout the State." Ascertaining the scope of gubernatorial powers requires that initial attention be directed toward the concluding phrase of Section 1 which provides that the Governor shall perform such duties as may be designated in the Constitution or prescribed by law. Is this language merely directory of the inherent powers of the Chief Executive, or is it to be read negatively as a limitation of the powers of that office — that the Governor is powerless to act in the absence of constitutional or statutory mandate? 81 C.J.S. States, 60, page 982, offers the following answer: "The Governor has no prerogative powers, but possesses only such powers and duties as are vested in him by constitutional or statutory grant. The extent and exercise of the Governor's powers under statute will depend upon the particular provisions thereof . . . . "The Executive power of the Governor is a continuing power, pertaining to the office and not to the man. The Governor is ordinarily charged with the duty of seeing that the laws of the State are faithfully executed, and is entrusted with such powers as may be essential to the performance of that duty . . . It has been held, however, that the Governor's general power to enforce the laws does not by implication confer any specific power which he would not otherwise possess. The power to secure efficient execution of the laws must be in the manner, by the method, and within the limitations prescribed by the Constitution and the Statutes of the State." This is in accord with the view obtaining in Oklahoma where it has been held that the powers of the Governor are defined by the Constitution. Haskell v. Houston, 21 Okl. 782,79 P. 92 (1908). Moreover, nothing appears in the Constitution which would remove the Governor from the rule laid down in Shaw v. Grumbine, 137 Okl. 96, 278 P. 311 (1929), that public officers have only such authority must be exercised in the manner prescribed by law. In view of this holding, it is significant that neither the Constitution nor the Statutes of Oklahoma expressly confer authority to issue Executive Orders carrying the force of law. This is not to infer from such silence the absence of authority to issue Executive Orders carrying the force of law. This is not to infer from such silence the absence of authority to issue Executive Orders. Certainly, the discharge of "supreme Executive power" entails the capacity to issue Executive Orders to accomplish efficient administration within the Executive Branch. The prohibition goes to the issuance of Executive Orders intended to accomplish a legislative effect. The decision in Russell Petroleum Company v. Walker, 162 Okl. 216, 19 P.2d 582 (1933), is directly on point. In weighing the validity of two Executive Orders, the Supreme Court of Oklahoma held: "Under the provisions of Article VI, and Section 1, Article IV, of the Constitution, no order, proclamation, or decree of the Governor of the State, as the Chief Executive thereof, has the force of law; the lawmaking power of the State being vested exclusively elsewhere." This language of the Court makes it abundantly clear that Executive Orders do not have the force of law. The basis for this conclusion was the Court's determination that "the lawmaking power of the State is vested exclusively in the Legislature." Thus, Executive Orders intended to accomplish a legislative result are invalid. Therefore, if the Water Resources Board (Board) has no statutory authority to carry out the intent of an Executive Order, it does not gain that authority by an Executive Order intending to accomplish a legislative purpose. No State governmental entity can lawfully gain new authority except by statutory enactment or constitutional amendment. The eminent question thus becomes, does the Board itself have the statutory authority to promulgate the needed rules and regulations? If the answer is yes, then the Governor, through an Executive Order through the power vested in him by Article VI, Section 8 can require all other State agencies and boards to comply therewith. If the answer is no, the authority to establish such regulations must come from the Legislature. According to 81 C.J.S. 58, states, pgs. 977, 978: "Generally speaking, state officers, boards, commissions, and departments have such powers as may have been delegated to them by express constitutional and statutory provisions, or as may properly be implied from the nature of the particular duties imposed on them . . . Executive and administrative officers, boards, departments, and commissions have no powers beyond those granted by express provision or necessary implication." It is a settled rule of law that: "In construing statutes, the cardinal rule is to ascertain and give effect to the legislative intention and to first seek that intention in the language of the statutes." In re Conservancy District No. 37 in Lincoln and Oklahoma Counties, 398 P.2d 525
(1964). With that basis, the statutes outlining the purpose of establishing the Board and granting it the authority and power to make rules and regulations can be examined. 82 O.S. 1085.2 [82-1085.2] grants the Board certain authority and reads as follows: "In addition to any and all other authority conferred upon it by law, the Oklahoma Water Resources Board shall also have authority: "1. Generally to do all such things as in the judgment may be necessary, proper or expedient in the accomplishment of its duties. . . "7. To make such rules, regulations, and orders as it may deem necessary or convenient to the exercise of any of the powers or the performance of any of the duties conferred or imposed upon it by this or any other law." In addition, 82 O.S. 1086.2 [82-1086.2] reads as follows: "For the purpose of effectuating the provisions of this act . . . . the Oklahoma Water Resources Board is hereby authorized, empowered, and directed: ". . . "2. To adopt such rules and regulations as may be necessary to effectuate the purpose of this act." Therefore, if one of the duties, powers, or purposes of the Board is to undertake flood plain management, then it clearly has the authority to promulgate rules and regulations to fulfill such responsibility. The State policy as to water, and the purposes for which the Board was created, are, simply, the encouragement of the conservation, storage, use, and distribution of water resources by means of dams, reservoirs, and other structures. 82 O.S. 1085.17 [82-1085.17]. At this point it should be noted that the instant questions arise due to consideration of the State of Oklahoma's qualifying for participation in the National Flood Insurance Program (NFIP). The scope of the NFIP extends far beyond the purposes for which the Board was created. The rules and regulations which the Board would have to execute and administer in order for the State to enter the NFIP would include banning new construction work in one-hundred-year flood plains and modifying those structures already there, construction or removal of sewer systems, new standards for mobile home and other housing developments, and the removal or banning of public utilities in the flood plain. Clearly, the authority the Board possesses does not extend so far as to allow it, in essence, the sole discretion to decide flood plain standards. Discretion of this nature belongs solely to the Legislature absent an express granting of same. Upon reviewing the totality of NFIP and the statutory authority of the Oklahoma Water Resources Board, it appears that the necessary powers inherent in the proposed Executive Orders are incompatible with those of the Board. Again, only by law may the Board gain the authority and power outlined in the proposed Executive Orders. The Governor may not grant such authorization and the Board has not been previously granted that authority by the Legislature. Thus, your first question must be answered in the negative, and your second question need not be considered herein. It is, therefore, the opinion of the Attorney General that the Oklahoma Water Resources Board cannot, by virtue of an Executive Order establish and administer comprehensive rules and regulations pertaining to flood plain management in the State of Oklahoma, or to require other state agencies to comply with same. (AMALIJA J. HODGINS) ** SEE: OPINION NO. 88-032 (1988) ** ** SEE: OPINION NO. 91-640 (1991) (UNPUBLISHED) ** ** SEE: OPINION NO. 95-036, 95-066 (1995) **