State ex rel. Strauss v. Dubuclet, State Treasurer.

No. 4031.

STATE OF LOUISIANA ex rel. JACOB STRAUSS v. ANTOINE DUBUCLET, State Treasurer.

This court, where there is a doubt as to its jurisdiction, would maintain it in a case in which the whole people of the State are interested, and if this were necessary in order to protect them from what may be, and as in this case appears to be, a fictitious claim upon the common treasury.

It does not follow that, because the State has appealed through the Attorney General, she can not appeal through the Governor as well. He clearly has the right to appeal on behalf of the State, and this right can not be taken away from him, simply because another officer of the government has been before him, when he takes the appeal within the delays required by law. In this case the appeal was taken in ample time.

It is not legally correct to say that no person is authorized to appeal on behalf of the State, except in cases where the attorney general is unable or unwilling to act. The prohibition is limited to the employment of counsel other than the Attorney General by the Treasurer and Auditor, and does not exclude the Governor from doing so.

Judgment in this case being rendered on the thirteenth of May, signed the same day, and the appeal taken on the seventeenth of May, being made returnable on the third Monday of said month, there was a good reason for extending the return day from the third Monday of May, only a few days after the judgment was rendered, until the first Monday in November; that being the first return day after the first Monday in May, on which this court would sit.

Where the Auditor had no authority to draw the warrants he issued, the fact of his drawing them would create no debt against the State, and if issued with the intention of defrauding the State, the Treasurer is not bound to pay them, simply because they may happen to be in the hands of an innocent holder.

Something more than the genuineness of the Auditor's signature and the lawfulness of the issue is required to protect the holder of State warrants, innocent though he may be. Not being commercial paper, they can be transferred only by the indorsement of the parties in whose favor they were issued. The genuineness of that indorsement must be proved.

APPEAL from the Eighth District Court, parish of Orleans. *Dibble, J. W. H. Rogers,* for relator and appellee. *Semmes & Mott, Hays & New,* and *S. Belden,* Attorney General, for respondent and appellant.

Justices concurring: Ludeling, Taliaferro, Howell, Wyly, Morgan.

MORGAN, J. Two appeals were taken from the judgment herein rendered in favor of Jacob Strauss. One was taken by the attorney general, and one was taken by special counsel appointed by the Governor.

The one by the Attorney General was taken on the seventeenth May, 1872, and was made returnable on the third Monday in May. The other was taken by the special counsel employed by the Governor on the eighteenth May, and was made returnable on the first Monday in November.

We are asked to dismiss the second appeal on the following grounds:

*First*—" That an appeal having been taken on behalf of the State of Louisiana by the Attorney General of the State, and made returnable on the third Monday of May, no other appeal on behalf of said State could be taken pending the said first appeal, and the action herein taken thereafter in the lower court on behalf of said State was and is null and void, for want of jurisdiction."

11

*Second*—"That no person is authorized to appeal on behalf of the State, except in cases where the Attorney General is unable or unwilling to act; that such facts do not exist herein, and, therefore, the Governor was without power to employ counsel."

*Third*—"That the appeal was made returnable at a day other than as assigned by law, and no reason existed therefor."

This proceeding was instituted on the twenty-fifth April, 1872. The relator's object is to force the State Treasurer to recognize, as legal and binding debts of the State, certain warrants held by him, issued by Wickliffe, and to cause them to be paid out of the State treasury.

The warrants amount to within a fraction of $140,000.

The answer is that they are fraudulent and spurious, and that the indorsements therein are forgeries.

The case was tried on the eighth May. It appears that these warrants, coming into the hands of auditor Graham, who succeeded Wickliffe, were marked by him "counterfeit," that he could find no traces of their having been issued in the books of his office, and that he had examined many of the parties in whose favor they purported to have been drawn, and in whose names they were indorsed, and that they all declared their signatures to be forgeries. Notwithstanding which, not one of these parties, although many of them are residents, and well known citizens of this city, were ever examined as witnesses, nor does any attempt seem to have been made to procure their testimony.

Judgment was rendered in favor of the relator as prayed for, on the thirteenth May, and was issued on the same day.

On the seventeenth May, the attorney general, intervening on behalf of the State, moved for an appeal, returnable on the third Monday in May. His transcript of appeal was not filed on the return day, nor was any application made to this court to extend the time in order to enable him to bring it up, and the relator's judgment has thus, in his opinion become final, and the State is to be saddled with the payment of $140,000, of which, the whole according to Auditor Graham, and the Attorney General, is spurious, unless we maintain the appeal taken by the special counsel of the State, which the relator says the law prohibits us from doing.

Where there is a doubt as to the jurisdiction of the court, we would maintain our jurisdiction in a case in which the whole people of the State are interested, and if this were necessary, in order to protect them from what may be, and, as in the matter before us appears to be, a fictitious claim upon the common treasury.

But in this case we are not called upon to do so. The letter, as well as the spirit of the law gives us the required jurisdiction.

*First*—It does not follow that because the State has appealed through the Attorney General that she can not appeal through the Governor,

State ex rel. Strauss v. Dubuclet, State Treasurer.

as well. He clearly has the right to appeal, on behalf of the State, and this right can not be taken away from him, simply because another officer of the government has been before him, when he takes the appeal within the delays required by law. In this case the appeal was taken in ample time.

*Second*—It is not legally correct to say that no person is authorized to appeal on behalf of the State, except in cases where the Attorney General is unable or unwilling to act. The prohibition is limited to the employment of counsel other than the Attorney General by the Treasurer and Auditor, and does not exclude the Governor from doing so.

*Third*—There was a good reason for extending the return day from the third Monday of May, only a few days after the judgment was rendered, until the first Monday in November, that being the first return day, after the first Monday in May, upon which this court would sit.

And we must believe that the Attorney General was of the opinion that these objections could not be well urged against the State, otherwise we take it for granted that he would have filed his transcript of appeal in time. He must have believed that the appeal taken by him had been superseded, for we can not believe that he could have been guilty of the carelessness of allowing a judgment to become final, upon a claim involving so enormous a sum of money, which claim he had denounced as spurious and forged, and from the judgment recognizing it to be valid he had appealed. He must have considered that the State was protected by the appeal taken by the special counsel employed by the Governor, and in this opinion we think he was right.

The motion to dismiss is refused.

### On the Merits.

The warrants upon which these proceedings are had, were drawn by Wickliffe, in favor of various parties. They have come into the possession of the relator. He and his employes say he got them in the usual course of business. Employes in the Auditor's office say that they appear to be drawn in the form generally used by Wickliffe, and that they believe his signature to them genuine. This may all be true. But if Wickliffe had no authority to draw the warrants, the fact of his drawing them would create no debt against the State; if they were uttered with the intention of defrauding the State, as is alleged in the answer, the treasury is not to be depleted to pay them, simply because they may happen to be in the hands of an innocent holder. Besides, something more than the genuineness of the Auditor's signature, and the lawfulness of the issue is required to protect the holder, innocent

though he may be. Now, the warrants in question, as we have already stated, are all issued in favor of certain parties, and are therefore only payable to those parties or to their order. Their indorsement alone could give them transfer, they not being commercial paper, and a forged indorsement conveys no title. And if they were made payable to the parties named, which parties were real creditors of the State, and their signatures thereon were forged, and the warrants had been paid, the State would still remain their debtor, and would have to pay again. Now, the Auditor of Accounts (Graham), testifies that when these warrants came into his possession he caused many of the indorsers thereon to come before him, and they each declared that their signatures were forgeries. Under this state of facts, and with this evidence before us, we can not affirm the judgment which orders their payment. Neither can we decide the case entirely against the relator. He may be right. If so, he will only suffer delay. . But we think that the interest of public justice requires that the case should be remanded, in order that the validity of the debt which is claimed against the State may be properly inquired into, and the genuineness of the indorsements which alone gives to the relator his title, may be satisfactorily established.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be avoided, annulled and reversed, and that the case be remanded to the court from which it came to be proceeded in according to law, appellees to pay the costs of appeal.

Rehearing refused.