H. CLAY CRAWFORD, AS SECRETARY OF STATE, *Appellant,* v. ALBERT W. GILCHRIST, AS GOVERNOR AND AS AN INDIVIDUAL, *Appellee.*

1. It is the duty of the court to facilitate and not to retard the determination of litigated causes.

2. Where on application for a supersedeas order to suspend the operation of an injunction, the merits of the cause are fully argued, and the granting or refusal of a supersedeas will virtually dispose of the cause in which the people of the State are vitally interested, the court may, for the public welfare, consider the cause on its merits in adjudicating the application for a supersedeas, questions of law only being involved.

3. A determination of whether an amendment to the constitution has been validly proposed and agreed to by the legislature, is to be had in a judicial forum where the constitution provides no other means for such determination.

4. The act of the Secretary of State in publishing and certifying to the county commissioners proposed amendments to the constitution, is in its nature ministerial, involving the exercise of no discretion, and if the act is illegal it may be enjoined in appropriate proceedings by proper parties, there being no other adequate remedy afforded by law.

5. Where an alleged illegal ministerial official act has relation to legislative action, such action may be considered by the courts in determining the validity or invalidity of the ministerial act. This is not an interference by the courts with the legislative department of the government.

6. The Governor of the State suing as such and also as a citizen, taxpayer and elector is a proper complainant in proceedings brought to enjoin the Secretary of State from publishing at public expense and certifying proposed amendments to the constitution upon the ground that such proposed amendments are invalid because they have not been duly "Agreed to by three-fifths of all the members elected to each house" of the legislature.

7. If essential mandatory provisions of the organic law are ignored in amending the constitution, it violates the right of all the people of the State to government regulated by law.

8. It is the duty of the courts in authorized proceedings to give effect to the existing constitution.

9. The provision of the organic law requiring proposed amendments of the constitution to "be agreed to by three-fifths of all the members elected to each house" of the legislature is mandatory and it, clearly contemplates that such amendments shall be agreed to by the deliberate, final, affirmative vote of the requisite number of the members of each house at a regular session.

10. Every word of a State constitution should be given its intended meaning and effect, and essential provisions of a constitution are to be regarded as being mandatory.

11. The amendment article of the constitution does not preclude the Senate, in acting upon proposed amendments to the constitution, from the exercise of its power under the constitution to determine the rules of its proceedings, or prevent the operative effect of any other provision of the constitution, not in conflict with the amendment article.

12. In the absence of constitutional restraints, and when exercised by a majority of a constitutional quorum, the power given by the constitution to the Senate "to determine the rules of its proceedings," extends to the determination of the propriety and effect of any action taken by the Senate under the constitution, including the right of a majority of a constitutional quorum, to reconsider the passage by a three-fifths vote of a proposed amendment to the constitution.

13. A right to reconsider action taken is an attribute of all deliberative bodies, and it is not forbidden to the legislature by the constitution.

14. When not otherwise provided by law all deliberative bodies have a right during the session to reconsider action taken as they deem proper, and it is the final result only that is to be regarded as the thing done.

15. A vote adopting a resolution and a vote duly taken to reconsider the vote of adoption, "like positive and negative quantities in equation, destroy one another, and are as if they were expunged from the journals."

16. When the Senate duly determines that the passage by it of a proposed amendment to the constitution has been reconsidered, such determination is binding on the courts, and such reconsideration nullifies the vote of adoption, and the proposed amendment-has the status of a pending matter in the Senate.

17. Where the Senate journal clearly shows that a resolution has been reconsidered and that the future reconsideration of the resolution is fixed for a day certain, an entry in the journal on a subsequent day that the motion to reconsider the resolution is made subject to call must be regarded as a clerical error, and should be construed as referring to the further consideration of the resolution, and not to the motion to reconsider.

18. Under the constitution the due proposal of constitutional amendments by the requisite action of the legislature is not an immaterial technical form that may be disregarded in amending the constitution.

19. An important vital element in the adoption of a valid amendment to the constitution is that it shall be "agreed to by three-fifths of all the members elected to each house" of the legislature. If a proposed amendment is passed by the requisite vote in the Senate it is done subject to the right of the Senate under the rules to reconsider such passage, and if such passage is duly reconsidered, and the proposed amendment is not afterwards duly "agreed to" its publication and submission to the electors is not authorized by the constitution and may be enjoined in appropriate proceedings where no other adequate remedy is afforded by law.

SHACKLEFORD AND COCKRELL, J. J., dissent.

Appealed from the Circuit Court for Leon County.

STATEMENT.

During the regular session of the legislature of 1911, certain proposed amendments to the State constitution were considered by both houses of the legislature under the designation of House Joint Resolution No. 222.

The Secretary of State is publishing the propositions contained in the said Joint Resolution and the further publication and certification thereof have been enjoined. The defendant appealed and applies for a supersedeas.

It appears that House Joint Resolution No. 222, proposing an amendment to the State constitution, was considered by the House, and by a vote of 37 to 24 "failed to receive required number of votes" (p. 1362 House Journal). Subsequently this vote was reconsidered and the Joint Resolution was duly adopted by the requisite three-

fifths vote of the House of Representatives and spread upon the Journal of the House (p. 1505) under an enacting clause, viz: "Be it enacted by the Legislature of the State of Florida;" that the same resolution was certified to the Senate under an adopting clause, viz: "Be it Resolved by the Legislature of the State of Florida" (Senate Journal p. 1185) ; that such resolution was on May 24th, 1911, "passed" by the requisite three-fifths vote of the Senate and spread upon the Journal of the Senate (Senate Journal p. 1250), and such passage was certified to the House of Representatives with the resolution (Senate Journal p. 1760) ; that on the succeeding day (May 25, 1911), as provided by the rules of the Senate adopted pursuant to the authority given by the constitution to each house to determine its own rules, a motion was duly made in the Senate to reconsider the vote by which House Joiht Resolution No. 222 was passed by the Senate, which motion to reconsider went over under the rules (p. 1337, Senate Journal) ; that the resolution was on a motion agreed to by the Senate recalled from the House of Representatives, (p. 1424 Senate Journal) and duly returned to the Senate (House Journal p. 1907; Senate Journal p. 1529) ; that as shown by the Senate Journal page 1497 : "Mr. Calkins raised the point that House Joint Resolution No. 222 having been passed by three-fifths of all the members elected to each House, and the yeas and nays having been entered upon their respective Journals, the Senate can not now reconsider their vote whereby said Joint Resolution was agreed to by the Senate.

"Mr. Calkins moved that the motion to reconsider House Joint Resolution No. 222 be tabled.|

"Upon which a yea and nay vote was demanded.

"The roll was called and the vote was:

"Yeas (names omitted) 7.

"Nays (names omitted) 21.

"So the motion to reconsider was not laid on the table;" that thereupon, as shown by the Senate Journal pages, 1497 and 1498:

"The question recurred upon the reconsideration of the vote by which the resolution passed the Senate.

"A yea and nay vote was demanded.

"The roll was called and the vote was:

"Yeas (names omitted) 16.

"Nays (names omitted) 13.

"So the motion to reconsider was agreed to.

"Mr. Calkins moved that the consideration of this House Joint Resolution No. 222 be made an order for to-morrow.

"Mr. Flournoy moved to amend the motion by making House Joint Resolution No. 222 be made a special order for 9:30 tomorrow, Tuesday, May 30.

"Which was agreed to."

On page 1548 of the Senate Journal it is recorded that: "The motion to reconsider the vote by which House Joint Resolution No. 222 passed the Senate.

"Was taken up.

"Mr. Calkins moved that the further consideration of the motion to reconsider the passage of House Joint Resolution No. 222 be deferred, subject to call.

"Which was agreed to."

It does not appear that any further action respecting the resolution was taken by the Senate.

The Constitution of the State contains the following provisions:

Section 1. of Article XVII: "Either branch of the Legislature at a regular session thereof, may propose amendments to this Constitution; and if the same be agreed to by three-fifths of all the members elected to

each house, such proposed amendments shall be entered upon their respective journals with the yeas and nays, and published in one newspaper in each county where a newspaper is published, for three months immediately preceding the next general election of representatives, at which election the same shall be submitted to the electors of the State, for approval or rejection. If a majority of the electors voting upon the amendments at such election shall adopt the amendments the same shall become a part of the Constitution. The proposed amendments shall be so submitted as to enable the electors to vote on each amendment separately."

Section 17 of Article III, as amended in 1896: "Every bill shall be read by its title, on its first reading in either house, unless one-third of the members present desire it read by sections. Every bill shall be read on three several days, unless two-thirds of the members present when such bill may be pending shall deem it expedient to dispense with this rule. Every bill shall be read by its sections on its second reading and on its final passage, unless on its second reading two-thirds of the members present in the House where such bill may be pending shall deem it expedient to dispense with this rule. The vote on the final passage of every bill or joint resolution shall be taken by yeas and nays, to be entered on the journal of each House; Provided, That any general revision of the entire laws embodied in any bill shall not be required to be read by sections upon its final passage, and its reading may be wholly dispensed with by a two-thirds vote. A majority of the members present in each House shall be necessary to pass every bill or joint resolution.

All bills or joint resolutions so passed shall be signed by the presiding officer of the respective Houses and by

the Secretary of the Senate and the Clerk of the House of Representatives."

Section 12 of Article III. "Each House shall keep a journal of its own proceedings."

Section 11 of Article III provides that "A majority of each House shall constitute a quorum to do business."

Section 21 of Article IV: "The Secretary of State shall keep the records of official acts of the Legislature and executive department of the government."

Section 6 of Article IV: "The Governor shall take care that the laws be faithfully executed."

Section 6 of Article III: "Each House shall ————— determine the rules of its proceedings, which shall be published."

Among the printed rules of the Senate are the following:

"Rule 14. When a vote has been passed, it shall be in order for any member voting in the majority to move a reconsideration thereof on the same or succeeding day, and such motion (except during the last seven calendar days of the session) shall be placed first in the orders of the day for the day succeeding that on which the motion is made, and when a motion for consideration is decided, that vote shall not be reconsidered."

"Rule 34. The rules of parliamentary practice comprised in Jefferson's Manual shall govern the Senate in all cases to which they are applicable, and in which they are not inconsistent with the Standing Rules and Orders of the Senate or the Joint Rules of the two branches of the Legislature."

Jefferson's Manual Section 501: "The voice of the majority decides; for *lex majoris partis* is the law of all councils, elections, &c., where not otherwise provided."

*Park Trammell, Attorney General,* for the State.

*D. A. Finlayson, T. L. Clarke, Wm. W. Flournoy,* and *J. B. Johnson,* for Appellee.

WHITFIELD, C. J.—At the suit of the Governor of the State in his official capacity and also as a resident taxpayer, citizen and elector of the State, the Judge of the Second Judicial Circuit granted a temporary injunction restraining the Secretary of State from further publishing in the several newspapers of the State as duly proposed amendments to the constitution of the State, certain propositions that were considered in House Joint Resolution No. 222, which was considered by both houses of the Legislature at the regular session of 1911, and also restraining the Secretary of State from furnishing such matter to the county commissioners of the several counties of the State, to be posted at the polling places and placed on the official ballots as duly proposed amendments to the constitution of the State of Florida to be voted on for approval or rejection at the general election in November, 1912. An appeal was taken from the injunction order and a supersedeas is applied for under the statute.

The constitution mandatorily requires as an essential prerequisite to the publication and submission of a proposed amendment to the constitution, that it shall "be agreed to by three-fifths of all the members elected to each house" of the Legislature, thus making the specified legislative action not an immaterial technical form, but a vital element in the adoption of constitutional amendments, from which it would follow that if a proposed amendment is adopted before it has been duly agreed to by the Legislature, it does not become a valid part of the

4—Vol. 64.

existing constitution. Therefore the public welfare demands that the questions here raised as to the validity of the proposal of such amendments should be determined as speedily as the law will permit so as to avoid unnecessary expense, confusion and litigation in governmental matters that vitally affect all the people of the State. It is the duty of the courts to faciliate and not to retard the determination of litigated causes. In view of the great importance of this matter to the people of the State, this court has permitted the merits of the cause to be fully argued at the bar for both parties on the application for a supersedeas. As the granting or denial of a supersedeas will virtually dispose of the merits of the cause, and the public being vitally interested, the merits will be considered on this application for supersedeas, questions of law only being involved.

Under our system of constitutional government regulated by law, a determination of whether an amendment to the constitution has been validly proposed and agreed to by the Legislature, depends upon the fact of substantial compliance or non-compliance with the mandatory provisions of the existing constitution as to how such amendments shall be proposed and agreed to, and such determination is necessarily required to be in a judicial forum where the constitution provides no other means of authoritatively determining such questions. See State ex rel. McClurg, v. Powell, 77 Miss. 543, 27 South. Rep. 927, 48 L. R. A. 652, Kadderh v. Portland, 44 Or. 118, 74 Pac. 710; Hammond v. Clark, 136 Ga. 313; 71 S. E. 479, 38 L. R. A. (n. s.) 77; McConaughy v. Sect'y State, 106, Minn. 392.

"When a plain official duty, requiring no exercise of discretion, is to be performed, and the performance is refused, any person who will sustain personal injury by

such refusal, may have a mandamus to compel its performance; and when such duty is threatened or to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases, the writs of mandamus and injunction are somewhat correlative to each other." .Board of Liquidation v. McComb, 92 U. S. 531; Louisville & N. R. Co. v. Railroad Commissioners, 63 Fla. 491, 58 South. Rep. 543; Ellingham v. Dye 99, N. E. 1.

In Commonwealth v. Griest, 196 Pa. St. 396, 46 Atl. Rep. 505, 50 L. R. A. 568, and State *ex rel,* Secretary of State, 43 La. Ann. 590, the submission of duly proposed amendments to the constitution was enforced by mandamus. In Livermore v. Waite, 102 Cal. 113, 36 Pac. Rep. 424, 25 L. R. A. 312; and in State v. Cunningham 81 Wis. 440, 15 L: R. A. 651. The Secretary of State was enjoined from submitting proposed constitutional amendments. In State v. Thorson, 10 S. Dak. 349, 68 N. W. Rep. 202, 33 L. R. A. 682, and in people *ex rel.* Mills 30 Colo. 262, 70 Pac. Rep. 322, an injunction against the Secretary of State in similar cases was denied. The due proposal of the constitutional amendments by the requisite vote of the Legislature was not questioned in any of the cases where injunction was asked.

This controversy involves the due proposal of the amendment, not its contents. A proposal by the requisite action of the Legislature is a vital element in amending the constitution, while the effect of the contents of the amendment is not. If the submission of a proposed constitutional amendment to the electors may be enjoined when the contents of the amendments are invalid as in cases above cited, such a remedy is more appropriate if

the proposal, a vital element in the process of amendment, is invalid.

The act of the Secretary of State in publishing at public expense and in certifying to the county commissioners proposed amendments of the constitution, is in its nature ministerial involving the exercise of no discretion, and if the act is illegal it may be enjoined in appropriate proceedings by proper parties, there being no other adequate remedy afforded by law. When the alleged illegal act sought to be enjoined has relation to legislative action, such action may be considered in determining the legality or illegality of the act enjoined. This is not an interference by the courts with the legislative department of the government.

It is suggested that the Governor may decline to countersign warrants drawn on the State Treasury to pay for an unauthorized publication of constitutional amendments, that the publication has in large part been done and that the Legislature may provide for such publication to be paid for from the State Treasury. But that is not an adequate remedy afforded by law, and it does not affect the right to enjoin the further publication if it is not authorized by law.

In State v. Crawford, 28 Fla. 44, 10 South. Rep. 118, 14 L. R. A. 253, the court held that the Governor as such could maintain an action to compel the performance of a ministerial official action when the people of the State had an interest. See also Lilienthal v. Campbell, 22 La. Ann. 600; State ex rel. Strauss v. Dubuclet, 25 La. Ann. 161; Governor v. Allen, 8 Hump. (Tenn.) 176; Gen. Stats. of Fla. Sec. 88.

A resident taxpayer has the right to enjoin the illegal creation of a debt which he, in common with other property holders and taxpayers, may otherwise be compelled

to pay. Peck v. Spencer 26 Fla. 23, 7 South. Rep. 642; Lanier v. Padgett, 18 Fla. 842; Crampton v. Zabriskie, 101 U. S. 601.

In the Mandamus case of F. C. & P. Ry. Co. v. State *ex rel.* 31, Fla. 482, 13 South. Rep. 103, 34 Am. St. Rep. 30, 20 L. R. A. 419, it was held that "where the object is the enforcement of a public right, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested as a citizen in having the laws executed and the duty in question performed."

In this case the acts enjoined are ministerial in their nature; they involve no discretion; the interests and rights of all the people of the State are thereby vitally affected; the individual rights of the complainant as a citizen, a taxpayer and an elector are also substantially affected in common with other taxpayers and electors by the indebtedness incurred and by the acts performed. There is no adequate remedy afforded by law. These considerations in the light of reason and the authorities clearly make the complainant, who sues as Governor and also as a citizen, taxpayer and elector, a proper party to these injunction proceedings. See Ellengham, Secty of State v. Dye, —— Ind. ——, 99 N. E. Rep. 1; State *ex rel* v. Cunningham, 83 Wis. 90, 53 N. W. 35; 17 L. R. A. 145; 35 Am. St. Rep. 27.

The people of the State have a right to amend their constitution, and they also have a right to require proposed amendments to be agreed to and submitted for adoption in the manner prescribed by the existing constitution, which is the fundamental law. If essential mandatory provisions of the organic law are ignored in amending the constitution of the State and vital elements of a valid amendment are omitted, it violates the right of

all the people of the State to government regulated by
law.   It is the duty of the courts in authorized proceed-
ings to give effect to the existing constitution. · The pro-
posal of amendments to the constitution is a highly im-
portant function of government, that should be performed
with the greatest certainty, efficiency, care and delibera-
tion.   With this in view, the organic law confers this
prerogative exclusively upon the Legislature, a sovereign
deliberative body, and a co-ordinate department of the
State Government, whose acts are independent of the
other departments and subject only to the limitations
contained in the fundamental organic law of the land.
The provisions of the constitution mandatorily require
amendments of the constitution to be proposed by either
house of the Legislature in regular session and to be
"agreed to by three-fifths of all the members elected to
each house" of the Legislature.   These requirements
clearly contemplate that such amendments shall be agreed
to by the deliberate, final, affirmative vote of the requisite
number of the members of each house of the Legislature
duly taken at a regular session.

Every word of a State constitution should be given its
intended meaning and effect, and essential provisions of a
constitution are to be regarded as mandatory.

The constitution expressly provides that "Each house
shall —————— determine the rules of its proceed-
ings;" and also that, "A majority of each house shall
constitute a quorum to do business;" and also that, "Each
house shall keep a journal of its own proceedings, which
shall be published."   The provision that each house
"shall determine the rules of its proceedings," does not
restrict the power given to the mere formulation of
standing rules, or to the proceedings of the body in
ordinary legislative matters; but, *in the absence of con-*

*stitutional restraints,* and when exercised by a majority
of a constitutional quorum, such authority extends to the
determination of the propriety and effect of any action
as it is taken by the body as it proceeds in the exercise of
any power, in the transaction of any business, or in the
performance of any duty conferred uuon it by the con-
stitution.  This, of course, includes authority, subject to
the constitution, to determine the rules of procedure to
be observed in agreeing to proposed amendments to the
constitution, and embraces the right to determine the
reconsideration of action taken, when no provision of the
constitution is thereby violated.  See United States v.
Ballin, 144 U. S. 1, 12 Sup. Ct. Rep. 507.

"The two important vital elements in any constitu-
tional amendment are the assent of two-thirds of the
Legislature and a majority of the popular vote.  Beyond
these, other provisions are mere machinery and forms.
They may not be disregarded, because by them certainty
as to essentials are secured; but they are not themselves
the essentials."  Constitutional Prohibitory Amendment
Cases, 24 Kan. 700, cited by this court with approval in
West v. State, 50 Fla. 154, 39 South. Rep. 412.

The constitution of this State expressly ordains that
each branch of the Legislature at a regular session there-
of, may propose amendments to the constitution; *"and if*
the same be agreed to by three-fifths of all the members
elected to each house, such proposed amendments shall be
entered upon their respective journals, with the yeas and
nays, and published," etc.  This mandatory requirement
that a propoed constitutional amendment shall be agreed
to by the requisite vote of the Legislature is not a mere
immaterial technical form that may be disregarded in the
process of amending the constitution.

If by an affirmative vote of three-fifths of all the mem-

bers elected to the Senate a proposed amendment of the constitution is passed, and such vote is allowed by the Senate under "the rules of its proceedings" to become final, such proposed amendment would then be "agreed to" within the meaning of the constitution. But when a proposed amendment is "passed" by the requisite vote in the Senate, such passage is subject to the right to reconsider it under the rules authorized by the constitution, and when such vote is, by the Senate, pursuant to "the rules of its proceedings," duly determined to be reconsidered, and no provision of the constitution is thereby violated, the mere previous passage of the amendment by the Senate does not make the proposed amendment "agreed to" within the meaning of the constitution.

A right to reconsider action taken is an attribute of all deliberative bodies, and it is not forbidden to the Legislature by the constitution.

The Senate Journal page 1253, contains the yea and nay vote of the Senate on the proposed amendment. Then folows the entry: "So House Joint Resolution No. 222, having received the constitutional three-fifths majority vote of all the members elected to the Senate, passed, title as stated."

The Senate Journal shows that a motion was duly made in the Senate under its rule on the subject, to reconsider the vote by which House Joint Resolution No. 222 was passed, and that such motion was, by a vote of 21 to 7, decided by the Senate to be in order. And such journal clearly states that, on a vote of 16 yeas to 13 nays, "the motion to reconsider was agreed to," and that "Mr. Calkins moved that the reconsideration of *this House Joint Resolution No. 222* be made an order for tomorrow," and that Mr. Flournoy moved to amend the motion by making House Joint Resolution No. 222 a

"special order for tomorrow, Tuesday, May 30, etc., which was agreed to." Therefore it seems apparent that the subsequent entries in the Senate Journal, page 1548, as shown in the Statement, that "the motion to reconsider the vote by which House Joint Resolution No. 222 passed the Senate, was taken up," and that "Mr. Calkins moved that the further consideration of the motion to reconsider the passage of House Joint Resolution No. 222 be deferred, subject to call, which was agreed to," should be regarded as clerical errors; and such latter entries must be construed as referring, not to the *motion to reconsider the vote* by which the resolution was passed by the Senate, but to the further *consideration of the resolution itself,* the vote by which the resolution was passed having on a previous day been reconsidered by the Senate, as shown by the affirmative statements of the Senate Journal.

A vote adopting a resolution and a vote duly taken to reconsider the vote of adoption, "like positive and negative quantities in equation, destroy one another, and are as if they were expunged from the journals." Jefferson's Manuel, Sec. XLIII. See also Ashton v. Rochester, 133 N. Y. 187, 30 N. E. Rep. 965, 28 Am. St. Rep. 619. The constitutional mandate is that "Each house *shall* determine the rules of its proceedings." Under this power and imperative duty, the Senate adopted Rule 34, which provides that, "The rules of parliamentary practice comprised in Jefferson's Manual shall govern the Senate in all cases in which they are applicable, and in which they are not inconsistent with the standing rules and orders of the Senate or the joint rules of the two branches of the Legislature."

In the absence of a constitutional or other governing rule, Senate Rules 14 and 34, copied in the Statement, taken in connection with the provision in Jefferson's

Manual, Section 501, that "the voice of the majority decides; for *lex majoris partis* is the law of all councils, elections, etc., when not otherwise provided," the Senate was authorized by a vote of 16 yeas to 13 nays, to reconsider, and to determine, as it did, that a vote of three-fifths passing a proposed constitutional amendment was reconsidered, since a majority of a constitutional quorum voted, and 16 or more than two-fifths of all the 32 members elected to the Senate. No provision of the constitution is thereby violated, and the final action of the Senate is binding on the courts and on third parties.

As House Joint Resolution No. 222 was passed by the Senate subject to its rule that such passage might be reconsidered, the effect of the affirmative action taken by the Senate pursuant to its rules in declaring, as the result of a vote of 16 yeas to 13 nays, that the motion to reconsider the pasage of the joint resolution "was agreed to," is logically to nullify and render ineffective the vote by which the joint resolution had passed the Senate; so that, as a result of such reconsideration, the joint resolution not having been again agreed to, was and remained merely a pending matter in the Senate; and, consequently, the joint resolution was not "agreed to by three-fifths of all the members elected to each house," within the meaning of that provision of the constitution which is a mandatory essential prerequisite to publication and to ubmission of the matter to the electors for approval or rejection as an amendment to the constitution.

The rule stated in 29 Cyc. 1690, that "Where by statute a vote of two-thirds is required to pass a resolution, and no rule has been adopted regulating the practice on motions for reconsideration, a two-thirds vote is necessary therefor, has for its support only the cases of Stockdale v. Wayland School Dist., 47 Mich. 226, 10 N. W. Rep. 349,

and Whitney v. Village of Hudson, 69 Mich. 189, 37 N. W. Rep. 184. In the first case the motion was to rescind. not to reconsider. In these cases the action was taken by subordinate bodies by virtue of statutory authority and such bodies apparently had no constitutional authority, to determine their own rules of proceedings. Such cases, therefore, are not authority here, where a sovereign legislative body acts under constitutional power and duty to "determine the rules of its proceedings," with the further constitutional mandate that a majority shall constitute a quorum to do business, and where the reconsideration of action taken is not regulated by paramount law; and further, when Sec. 501, of Jefferson's Manual, adopted by the Senate, affords the governing rule that a majority decides where not otherwise expressly provided. See People *ex rel.* Locke v. Common Council of the City of Rochester, 5 Lansing (N. Y.) 11; State v. Foster, 7 N. J. Law, 101. All deliberative bodies, during their session, have a right to reconsider their proceedings as they deem proper, when not otherwise provided by law, and it is the final result only which is to be regarded as the thing done. See State v. Foster, 7 N. J. Law, 101.

None of the cases cited question the right of a deliberative body to reconsider action taken by it. Several of the cases recognize the right.

The provisions of the constitution relative to amendments therto do not exclude the use by the Senate of the authority conferred by the provisions of the constitution, that it "*shall* determine the rules of its proceedings," and that "a majority of each house shall constitute a quorum to do business," or exclude any other applicable provision of the organic law that is not in conflict with the amendment article.

Appellant contends that Article XVII, providing for

amending the constitution, is complete in itself, and that the validity of the action of the Legislature in proposing an amendment to the constitution is to be tested solely by said Article XVII. Such a contention may find some support in the general discussions of amendment provisions by courts in some States. Apart from the fact that such general language must always be considered in connection with the facts with which they were dealing, we do not think they should apply to the interpretation of the amendment clause of our constitution. Article XVII of our constitution can not be construed independently of all relation to other articles of the constitution, and especially of the legislative article. Article XVII provides no method of determining who shall constitute the Legislature of Florida; it makes no provision for a President of the Senate or a Speaker of the House; for the making of rules of procedure by either body; or for clerks or secretaries or other subordinates. It must be apparent that the makers of the constitution never intended that the Legislature when acting under Article XVII should act without such officials or aids. But the power for and duty of having such officials and aids and for determining the membership of both houses can only be found in the legislative and other Articles of the constitution. This necessary interrelation of Article XVII with other articles makes the position of the appellant untenable.

It does not appear that House Joint Resolution No. 222, proposing an amendment to the State constitution, was signed by the presiding officer of the Senate or by the presiding officer of the House of Representatives, or by the Secretary of the Senate, or by the Clerk of the House of Representatives.

The failure of the Legislature to have authenticated by the signatures of its constitutional officers, and to have filed with the Secretary of State in the usual way House Joint Resolution No. 222, is evidence that the two houses did not regard the resolution as having been finally "agreed to" within the meaning of the constitution. As such joint resolution was not so agreed to by each of the two houses of the Legislature as to entitle it to due authentication and publication and to submission to the electors of the State as a duly proposed amendment to the constitution, it is not necessary to determine here whether the constitution contemplates, as an essential requisite, that the presiding officers of the two houses and the Secretary of the Senate and the Clerk of the House of Representatives shall sign all joint resolutions duly agreed to by each house as proposed amendments to the constitution. That such joint resolutions that have been duly agreed to by each house should be authenticated by the signatures of the officers of each house mentioned in the constitution seems to be required by considerations of orderly procedure to secure certainty and responsibility in such matters, if not required expressly or impliedly by the provisions of the constitution. See Prohibitory Amendment Cases, 24 Kan. 700.

In view of the unusual circumstances of this case and of the great importance to the public of the questions involved, we think the parties to this litigation are to be commended, both for taking the proceedings that have brought these unusual questions before the courts for determination and for the great ability with which their counsel have presented them to this court.

Supersedeas denied.

TAYLOR AND HOCKER, J. J., concur.

COCKRELL, J., dissenting.

While doubting the usefulness of dissenting opinions I feel it my duty to state briefly some of the reasons impelling me to vote for a supersedeas on this appeal.

The majority opinion will probably have the practical effect of preventing a vote upon this proposed amendment, and upholds an injunction upon a bill which appears to me to be premature and defective both in parties and subject-matter. The opinion will probably deprive the people of an opportunity to accept or reject the amendment, and any serious doubts I might entertain upon any of my objections to the bill would cause me to withhold the injunctive arm of the court until the question might be properly and orderly presented for decision.

I do not see that the Governor in his official capacity has any status in the case; there is a marked distinction between what initial steps he may compel to be done, in order that certain rights of the people may be put in motion, and without which steps they are forever remediless, and the stoppage of an act the results of which may be remedied in the future by any private citizen.

As a taxpayer he has no equity here. The injury if any, as to which the bill is not clear, has been largely completed, in so far as the publication is complained of, and there is no showing that the certification to the various county Commissioners would entail expense.

It is difficult to see how the injunction, unless it be through the sweeping language of the majority opinion, would really affect the result desired by the complainant. It could hardly be questioned, that the vote of the people would be just as effective, should the Secretary of State

fail to certify the amendment or should the advertisement fall two or three weeks short of the three months mentioned in the constitution. The county commissioners of the several counties attend to the printing of the ballots, and they might obtain copies of the proposed amendments from the public journals of the two houses of the Legislature; so it would seem clear that the only officers whose action is now requisite and necessary to complete the submission of the amendments proposed by the Legislature, are not parties to and therefore bound by this injunction—yet the real object of this bill is to have us stop the county commissioners from printing the amendments upon the ballot.

I am much impressed by the reasoning of the Colorado court in the case cited in the majority opinion. The Legislature and the people, in the matter of these amendments, are treated as two legislative bodies, and it was held by the court, that the courts should not interfere during the *formative* period of legislation. *Non constat* the other body, the people, may vote down the proposal, either because they do not approve of the method of proposal or upon its merits. Should, however, the people adopt the amendment, the courts would then be open to any one, upon a showing that he was injuriously affected thereby, and then and not until then, in my opinion, should the courts interpose their views.

As to whether the Senate could and did destroy the effect of its recorded vote upon the amendment properly passed by the House and submitted to it, I do not see that I can now decide judicially and the action of the majority of the court has rendered it highly improbable that the question will ever again come before us. I may, however, suggest an analogy from the history of our country. The adoption of the war amendments to the

Federal Constitution has been accepted upon the theory that when a State Legislature once approved them, it it could not rescind its action, even before the proposed amendment had been ratified by a sufficient number of States to become part of the constitution. For the present discussion it suffices me to say that the two houses of the Florida Legislature have placed the same proposal for an amendment upon their respective journals with the requisite number of affirmative votes, and that the power of one of these bodies to rescind its action, a power asserted not under the amendment articles itself, but under other provisions of the constitution, is of two grave doubt to authorize me to refuse a supersedeas to an injunction upon a bill so pregnant with objections as is the one now before us.

SHACKLEFORD, J. concurs.