STATE of Oklahoma ex rel. Jan Eric CARTWRIGHT, Attorney General of Oklahoma, Appellant,

v.

GEORGIA–PACIFIC CORPORATION; John Deere Company; Pryor Industrial Conservation Company; N-Ren Corporation; Nipak, Inc.; National Gypsum Company; Pryor Foundry, Inc.; Kaiser Agricultural Chemicals Corporation; the Oklahoma Ordnance Works Authority, and Jay Casey, Trustee, Gene R. Redden, Trustee, William P. Willis, Jr., Trustee, Russell F. Hunt, Trustee, W. Carlisle Mabry, Trustee, Acting in their Official Capacities as Trustees of the Oklahoma Ordnance Works Authority, Appellees.

No. 56587.

Supreme Court of Oklahoma.

Dec. 14, 1982.

Rehearing Denied June 7, 1983.

Jan Eric Cartwright, Atty. Gen., pro se. Floyd W. Taylor, First Asst. Atty. Gen., John F. Cooper, Asst. Atty. Gen., Oklahoma City, for appellant.

Charles W. Shipley, Lance Stockwell, Boesche, McDermott & Eskridge, Tulsa, Andrew Wilcoxen, Wilcoxen & Cate, Muskogee, for appellee, Georgia-Pacific Corp.

Frederic Dorwart, J. Michael Medina, Holliman, Langholz, Runnels & Dorwart, Tulsa, for appellee, Nipak, Inc.

Alfred B. Knight, Knight, Wagner, Stuart & Wilkerson, Tulsa, for appellee, Pryor Indus. Conservation Co.

Gene L. Mortensen, Rosenstein, Fist & Ringold, Tulsa, for appellee, Pryor Foundry, Inc.

Richard C. Ford, D. Kent Meyers, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Joe R. Kennedy, Kennedy, Kennedy & Wright, Muskogee, for appellee, Nat. Gypsum.

William C. Anderson, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Jack Y. Goree, Whitten, Osmond, Goree & Davies, Tulsa, for appellee, Oklahoma Ordnance Works Authority.

Charles C. Baker, Ronald N. Ricketts, Gable, Gotwals, Rubin, Fox, Johnson & Baker, Tulsa, for appellee, Kaiser Agricultural Chemicals Corp.

John S. Athens, Gary C. Clark, Conner, Winters, Ballaine, Barry & McGowen, Tulsa, for appellee, John Deere Co.

William D. Nay, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Gary J. Dean, Lyons & Dean, Pryor, for appellee, N-Ren Corp.

LAVENDER, Justice:

The Attorney General of the State of Oklahoma brought suit in the District Court of Mayes County, State of Oklahoma, in the name of the State of Oklahoma, ex rel. Jan Eric Cartwright, Attorney General of the State of Oklahoma, against defendants below for actual and punitive damages to the State of Oklahoma by reason of loss of certain fish and water fowl, cleanup costs,

and loss of tax revenue caused by the emission into the waters of Pryor Creek and the Fort Gibson reservoir by defendants of polycholorinated biphenyls ("PCB's"). The action was brought without the Attorney General's having first procured the approval or consent of the Governor of the State of Oklahoma or of either branch of the Oklahoma Legislature.

The trial court sustained Objections to Jurisdiction and Alternative Pleas in Abatement of all defendants based on a challenge to the capacity or standing of the Attorney General to bring the action on behalf of the State of Oklahoma, and sustained a special Plea to the Jurisdiction of defendant Oklahoma Ordnance Works Authority which alleged its existence as a state agency and its immunity to suit by the plaintiff.

Plaintiff appeals.

The determinative issue on appeal is whether the Attorney General has capacity or standing to bring a *publicum jus* action without having first obtained the consent or approval of the action by the Governor or of either the Senate or House of Representatives of the State of Oklahoma. We hold that the Attorney General does not have the capacity or standing to bring the suit. And having so determined, it is unnecessary to consider the claim of governmental immunity of the Oklahoma Ordnance Works Authority.

In the case of *State v. Huston,* 21 Okl. 782, 97 P. 982 (1908), the resolution of the issue before us is said to be "a matter of simple statutory construction." We agree.

Art. 6, § 1 A of the Oklahoma Constitution provides:

"The Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction, Chief Mine Inspector, Commissioner of Labor, Commissioner of Insurance and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books and papers at the seat of government, *and shall perform such duties as may be designated in this Constitution or prescribed by law.*" (Emphasis supplied.)

Art. 6, § 2 provides:

"The Supreme Executive power shall be vested in a Chief Magistrate, who shall be styled 'The Governor of the State of Oklahoma.' "

Art. 6, § 8 provides:

"The Governor shall cause the laws of the state to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he shall be a conservator of the peace throughout the State."

The paucity of constitutional enumeration of the duties of the state's Attorney General is more typical than rare among the states, and it has been said that there are twenty-seven state constitutions which invest upon the Attorney General duties "prescribed by law" or make use of words of similar import, the judicial construction of which has led to three divergent views: (1) The Attorney General is invested with those duties which existed at the common law; but the legislature has the power to not only add to them, but may lessen or limit the common law duties which attached to the office under common law. (2) The Attorney General has no common law duties, and the legislature may deal with the office at will. (3) The Attorney General not only is invested with common law duties, such duties are invioable and cannot be diminished by the legislature.[1]

The common law powers and duties of the Attorney General stem largely from the original nature of the office in England, where the Attorney General was the chief legal adviser of the Crown and was entrusted with the management of all legal affairs and the prosecution of all suits, civil and criminal, in which the Crown was interested. He exercised the right of enforcing public charities, possessed supervisory pow-

1. See *Johnson v. Commonwealth,* 291 Ky. 829, 165 S.W.2d 820 (1942).

ers over the estates of lunatics, and could institute equitable proceedings for the abatement of public nuisances which affected or endangered the public safety or convenience and required immediate judicial interposition.[2]

■ Insofar as the law of Oklahoma is concerned, it appears well settled that the duties of the Attorney General embrace those duties and powers as were usually incident to the office of Attorney General in England under the common law, when not locally inapplicable. In *State v. Huston, supra,* (on rehearing, at p. 992) it was held:

"The correct rule appears to be that, where the office of Attorney General is created in states where the common law prevails, without any reference to the duties of such office, the word is used with its accepted meaning under the common law, and carries with it such duties and powers as were usually incident to the office of Attorney General in England under the common law, when not locally inapplicable."

This view is fortified by the provisions of 12 O.S.1981, § 2.[3]

In the case of *State ex rel. Derryberry v. Kerr-McGee Corporation,* Okl., 516 P.2d 813 (1973) we held, in speaking of the office Attorney General:

"In the absence of express statutory or constitutional restrictions, the common law duties and powers attach themselves to the office as far as they are applicable and in harmony with our system of government."[4]

Having determined that the powers and duties of the Attorney General under the Constitution of the State of Oklahoma carries with it the duties and powers as were usually incident to the office under the

English common law, we must next determine whether those common law powers and duties have been modified by statutory law under 12 O.S.1981, § 2.

Title 74 O.S.1981, § 18b, insofar as pertinent to the issue before us, provides:

"The duties of the Attorney General as the Chief Law Officer of the state shall be:

\*   \*   \*   \*   \*   \*

(c) *To appear at the request of the Governor, the legislature, or either branch thereof,* and prosecute and defend in any court or before any commission, board or officers any cause or proceeding, civil or criminal, in which the state may be a party or interested; and when so appearing in any such cause or proceeding, he may, if he deems it advisable and to the best interest of the state, take and assume control of the prosecution or defense of the state's interest therein." (Emphasis added.)

■ Thus, the question becomes one of statutory construction in determining whether the words, "To appear at the request of the Governor, the legislature, or either branch thereof," are words of limitation which require the request or approval of the Governor or either branch of the Legislature as a condition precedent to the filing of a *publicum jus* action by the Attorney General, or are supplemental to the common law powers and duties of that office, thereby leaving the filing of the suit within the discretion of the Attorney General in the absence of such request or approval.

Both plaintiff and defendants in their briefs address the questions of whether *State v. Huston, supra,* is (a) determinative of the issue before us, (b) distinguishable from the case before us, or (c) ought to be

---

2. 7 Am Jur 2d Attorney General § 9.

3. 12 O.S.1981, § 2 provides: "The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

4. In accord, see *Sarkeys' v. Independent Sch. Dist. No. 40, etc.,* Okl., 592 P.2d 529 (1979) (at p. 534).

followed in light of historical events transpiring since its rendition in 1908.

In *Huston,* C.N. Haskell, as Governor of the State of Oklahoma, filed an action for a writ of prohibition against a district court judge and the Attorney General to prohibit the prosecution of an action brought by the Attorney General in the district court to enjoin the Prairie Oil & Gas Company from committing a nuisance in the alleged improper use of the highways, and to forfeit its charter for an alleged improper use of the highways, and to forfeit its charter for an alleged failure to comply with the laws of the state. The Governor's suit challenged the standing of the Attorney General to bring and maintain the action without having first procured the Governor's consent to the filing of the action.

The Oklahoma Constitution then, as now, provided (Art. 6, § 1 A): "The executive authority of the State shall be vested in a Governor, ... Attorney General ... each of whom ... shall perform such duties as may be designated in this Constitution or prescribed by law."

Section 6567 of Wilson's Rev. & Ann.St. Okl. of 1903 (carried over after statehood from territorial days) provided, in part: "There shall be in and for the territory of Oklahoma an Attorney General who shall be appointed by the Governor ...; *and shall also when requested by the Governor, or either branch of the Legislature* appear for the territory, and prosecute or defend in any other court or before any officer in any case or matter, civil or criminal, in which the territory may be a party or interested, ...." (Emphasis supplied.)

Title 74 O.S.1981, § 18b(c) provides, in part: "To appear *at the request of the Governor, the Legislature, or either branch thereof,* and prosecute and defend in any court or before any commission, board or officers any cause or proceeding, civil or criminal, in which the state may be a party or interested; ...." (Emphasis supplied.)

In *Huston* the Court held (986): "It would seem that a proper construction of the words as used in that section 'when requested' should be 'if requested,' thereby making the right of the Attorney General to bring a suit in the name of the state in the district court to depend, as a condition precedent, upon executive discretion to be exercised by the Governor. We are clearly of the opinion that the word 'when,' as used in this connection means no more than 'in case' or 'if,' and this construction is supported by the authorities."

We do not perceive any contextual differentiation in the two statutes between "when requested" and "at the request of." Merriam-Webster's dictionary gives an accepted meaning of the word "when" as being "in the event that: If," and an accepted meaning of the word "at" as "—used as a function word to indicate the means, cause, or manner."

■ The ascertainment of legislative intent is the cardinal rule of statutory construction; and in the absence of a contrary definition of the common words used in a legislative act, we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance. *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* Okl., 614 P.2d 576 (1980).

■ The Attorney General assails the efficacy of *Huston* on the ground that under the territorial statutes relating to the Attorney General considered in *Huston,* the office of Attorney General was appointive and his term limited to two years. Since then, the office had become elective with a more extended term, and that in 1939, the Oklahoma Legislature enacted what is now codified as 74 O.S.1981, § 18 providing that, "The Attorney General shall be the *Chief Law Officer* of the State." Thus, he argues, the elevation of the stature of the office is a reaffirmation of the common law duties and powers of the Attorney General. We find merit in the argument and support therefor in the authorities cited by the Attorney General; but, having so concluded, the question remains as to whether those common law powers and duties have been modified by 74 O.S.1981, § 18b(c). We fail to see that the legislative investiture of the

mantle of "Chief Law Officer" alone conferred upon the office a stature which it did not already have, and certainly cannot be said by implication to have repealed or modified the provisions of 74 O.S.1981, § 18b(c).

■ The Attorney General urges that the amendment of § 1289, Wilson's Rev. and Ann.St.Okla.1903 (which had authorized the county attorney of the several counties to appear in district courts in behalf of the territory (state) in all actions in which the territory (state) is interested) by the enactment of 19 O.S.1961, § 183, which amendment removed the power and standing of the county attorney to appear in behalf of the state, such amendment likewise enhanced the stature of the Attorney General. The Attorney General further asserts that the enactment of 19 O.S.1961, § 183 by implication modified or repealed the provisions of 74 O.S.1981, § 18. However, we fail to see how the withdrawal of the power and standing of the county attorney to appear in behalf of the state in district court in cases in which the state is interested *invests* the Attorney General with power and standing to institute such actions without governmental or legislative sanction in the face of the clear prohibition of 74 O.S. 1981, § 18. And the enactment of 19 O.S. 1961, § 183 standing alone, does not by implication repeal said § 18. Repeals by implication are not favored and an earlier statute will not be repealed by a later statute unless there is a conflict between the two which is irreconcilable. *Gulf Oil Company v. Woodson,* Okl., 505 P.2d 484 (1972).

Further insight into the intent of the Legislature in the enactment of what has become 74 O.S.1981, § 18b is to be gleaned from a consideration of the legislative history of that act.

Senate Bill 174, as originally introduced, provided:

"Section 3. The duties of the attorney general as chief law officer of the state shall be:

    \*      \*      \*      \*      \*      \*

c. To appear at the request of the Governor, the legislature, or either branch thereof, *or he may appear on his own initiative, when in his discretion such is necessary for the state,* and prosecute and defend in any court or before any commission, board or officers in any cause or proceeding, civil or criminal, in which the state may be a party or interested; ...." (Emphasis added.)

Upon introduction, S.B. 174 was referred to the Senate Judiciary Committee where, on March 2, 1939, it was ordered out of committee.

On March 8, 1939, engrossed S.B. 174 was prepared, with the emphasized language contained therein.

On March 20, 1939, it passed the Senate, intact.

The bill was then referred to the House Committee on the Judiciary No. 1, where it was reported out on March 16, 1939, with the emphasized language intact.

The bill then reached the House floor, where House Amendment No. 1 was adopted. That amendment struck the emphasized language from the act. The amended S.B. 174 then passed the House on March 28, 1939, and was returned to the Senate.

The Senate refused to accept the amended S.B. 174 and requested a conference committee which accepted the House Amendment No. 1 on April 7, 1939.

The Senate passed S.B. 174 as amended by the Conference Report, and on April 13, 1939, the House followed suit. S.B. 174 became 74 O.S. § 18b when signed by the Governor on April 21, 1939.

While the legislative history as memorialized under the Oklahoma system of recording legislative history does not include debates, explanatory committee reports, or other documentation which might shed light upon the reasons or considerations motivating the action or inaction on the part of the legislature, the evidence is clear and unequivocal that the Oklahoma legislature specifically considered a proposed enactment which would have invested the Attorney General with standing to institute actions on his own initiative, at his discretion, and rejected it.

In 73 Am.Jur.2d, Statutes § 171, at p. 375, it is said:

"In the interpretation of a statute of doubtful import, the fact that a provision originally in a bill is omitted from the act as finally passed by the legislature has been regarded as a significant factor."

In *Lekan v. P. & L. Fire Protection Co.,* Okl., 609 P.2d 1289 (1980), we held that any doubt about the meaning of a statute may be resolved by reference to its history. In the case before us, the previous legislative amendment of what has now become 74 O.S.1981, § 18b by the reenactment of words having like import to the words replaced, coupled by a clear legislative rejection of proposed legislative language which would have conferred upon the Attorney General the discretion to initiate the type of suit brought by the Attorney General without first obtaining the approval of the Governor or of either branch of the legislature, manifests a clear legislative intent not to confer such powers, duties and standing upon the Attorney General, thereby reaffirming the authority of *State v. Huston.*

This opinion does not intimate a view as to whether authority to bring this action is reposed by statute in some other agency or official of the state (other than the Attorney General).

Our decision in *Sarkeys v. Independent Sch. Dist. No. 40, etc., supra,* is not contrary to or inconsistent with our holding herein. In *Sarkeys,* the question of whether the Attorney General has standing to bring an action as *parens patriae* to enforce a *charitable trust* without first securing the consent or approval of the Governor or either branch of the Legislature was not before the Court for determination (the Attorney General did commence the action). There is dictum therein which might suggest such standing based upon a common law right invested in the office of Attorney General, *and* because of certain statutory rights (to receive notices, inter alia) conferred upon the Attorney General in 60 O.S.1981, § 175.-18(B), a section of the Uniform Trusts Act. The action before us involves neither a charitable trust or the Uniform Trusts Act.

The judgment of the trial court is affirmed.

HODGES, HARGRAVE, OPALA and WILSON, JJ., concur.

IRWIN, C.J., BARNES, V.C.J., and SIMMS and DOOLIN, JJ., dissent.