Dear Mr. Metcalf,
The Attorney General has received your request for an official opinion asking, in effect:
 Under what circumstances may the Oklahoma Historical Society lawfully make contracts with private parties or firms, of the Society's own choosing, to perform restoration work at historic sites and museums, without being required to submit the selection of the contractor to the authority of a statutorily appointed purchasing agent and without the necessity of subjecting the contract to public competitive bids?
 I. Introduction
There are two distinct bodies of statutory law which could apply to the types of contracts described in your question. In some cases, the Society would, by such contracts, obtain personal or professional undertakings,i.e., "services," and the contract would therefore constitute an acquisition of such services within the meaning of the Central Purchasing Act, 74 O.S. 85.1 et seq. (1981), as amended. An example of such a contract would be an agreement with a skilled artisan for the restoration of an artifact or exhibit in the collections of the Society.
In other cases it may be that the Society, by such contracts, would intend to accomplish some "beneficial or valuable change or addition, betterment, enhancement or amelioration of or upon any real property, or interest therein, belonging to a public agency, intended to enhance its value, beauty or utility or to adapt it to new or further purposes."See, Public Competitive Bidding Act of 1974, 61 O.S. 101 et seq. (1981) at 61 O.S. 102(5), as amended. Such a contract would also constitute a contract for services, Gilbert Central Corp. v. State of Oklahoma, 57 O.B.A.J. 788 792-794 (Okla., March 25, 1986), but of a specialized type defined as a "public construction contract." 61 O.S. 102(4) (1981), as amended.
Consequently, the making of this second type of contract would be governed by the Public Competitive Bidding Act of 1974, supra, rather than the Central Purchasing Act. This is because where special statutory provisions clearly include a matter and provide different rules and procedures from those in a general statutory provision which might also apply, the special statute, and not the general statute, applies. City ofTulsa v. Smittle, 702 P.2d 367 (Okla. 1985).
However, it is outside the proper scope of an official opinion of the Attorney General to decide whether any particular contract is controlled by either the Central Purchasing Act or the Public Competitive Bidding Act of 1974. Therefore, it will be necessary to address your question independently under each of these laws.
 II. Contracts governed by the Public Competitive Bidding Act of 1974
As noted above, where a contract for services has as its object the construction, maintenance or improvement of buildings or other real estate owned by the State of Oklahoma, the selection of a contractor and many terms of the agreement are governed by the Public Competitive Bidding Act of 1974, 61 O.S. 101 et seq. (1981), as amended. Where it is anticipated that the cost of such services will exceed $7,500.00, the Act applies and it is required that the contract be awarded to the "lowest responsible bidder." 61 O.S. 103 (1981). The procedures for soliciting and accepting bids, and for performance of the resulting contracts, are specified in some detail in the Act; bonds are required, detailed plans must be provided, and a variety of requirements for the administration of public construction contracts after they are awarded have been included in the law. See, e.g., 61 O.S. 104 — 61 O.S. 113 (1981); 61 O.S.113.1 (1985).
The Public Competitive Bidding Act of 1974 is plainly applicable to contracts falling under its terms when made by the Oklahoma Historical Society, regardless of whether the work to be performed involved restoration work of historic sites or museums. 61 O.S. 102(3) (1981). For any contract which is within the terms of the Act, the Office of Public Affairs serves as the statutorily appointed purchasing agent which selects the contractor and makes the award of the public construction contract. 61 O.S. 204(7) (1985); see also, A.G. Opin. No. 84-66 andGipson v. Davis Realty Co., 30 Cal.Rptr.253 (App.Div. 1963). It follows that when a contract to be made by the Society is of such nature as to fall within the provisions of the Public Competitive Bidding Act of 1974, the Society may not enter into the agreement without submitting the selection of the contractor to the authority of the statutorily appointed purchasing agent and without subjecting the contract to public competitive bids.
 III. Contracts Governed by the Oklahoma Central Purchasing Act.
If a contract for services to be entered into by the Society is not within the terms of the Public Competitive Bidding Act of 1974, it will necessarily be governed instead, by default as it were, by the Oklahoma Central Purchasing Act, 74 O.S. 85.1 et seq. (1981), as amended. The Central Purchasing Act gives the State Purchasing Director "sole and exclusive authority and responsibility for the acquisition of all materials, supplies, equipment and services acquired, used or consumed by agencies of the state government." Id. 74 O.S. 85.5. As a general rule, under this Act competitive bidding will be required whenever the cost of a contract will exceed $750.00, though there exist a variety of exclusions, exceptions and exemptions. See, e.g., id. 74 O.S. 85.12.
One such exemption of direct pertinence to your question was included in an amendment made to the Central Purchasing Act in 1985, and now found at 74 O.S. 85.7(D) (1985). This amendment states:
 "Restoration of historic sites and museums requires that only the most qualified and experienced contractors be selected. Such contracts shall not be subject to the competitive bid requirements of this section or any other provision of the Oklahoma Central Purchasing Act. The procedures will be followed except contractor and bid selection will be the prerogative of the Oklahoma Historical Society Board and selection will be based on contractors' documented qualifications and experience."
Application of the foregoing amendment requires the ascertainment of legislative intent, which means that it must be assumed that the Legislature intended the common words used in the act to have the same meaning as that attributed to them in ordinary and usual parlance. Stateex rel. Cartwright v. Georgia-Pacific, 663 P.2d 718 (Okla. 1983). With such directions in mind, it appears that the Legislature intended that the special class of services contracts defined above would be subject to all of the "procedures" of the Central Purchasing Act and the rules of Central Purchasing Division (see, 74 O.S. 85.5 (1985)), with two exceptions: (1) No competitive bidding is required at all; (2) Actual selection of the provider of such services is the sole and exclusive prerogative of the Board of the Oklahoma Historical Society.
 IV. Conclusion It is, therefore, the official opinion of the Attorney General that incases of contracts governed by the Oklahoma Central Purchasing Act, 74O.S. 85.1 et seq. (1981), as amended, to acquire services of contractorsfor restoration of historic sites and museums, the Board of the OklahomaHistorical Society may select such contractors without being required tosubmit the selection of the contractor to the authority of the StatePurchasing Director acting as statutorily appointed purchasing agent, andwithout the necessity of subjecting the contract to public competitivebids, all as provided by 74 O.S. 85.7(D) (1985). However, "publicconstruction contracts" as defined by the Public Competitive Bidding Actof 1974, are not governed by the Oklahoma Central Purchasing Act, and theOklahoma Historical Society Board possesses no special prerogatives withregard to such contracts.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
JAMES B. FRANKS, ASSISTANT ATTORNEY GENERAL CHIEF, TORT DEFENSE DIVISION