Dear Secretary-Treasurer, Foster
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following question:
May a licensed optometrist lease or sublease offfice spacefrom a retail optical supplier or seller?
¶ 1 In order to answer this question, one must review both the statutes governing the practice of optometry (59 O.S. 581
(1981) et seq., as amended) and the statutes regulating the sale of optical goods (59 O.S. 941 (1981) et seq., as amended). The two most relevant statutes are 59 O.S. 596 (1981), and 59 O.S.944 (1981). 59 O.S. 596, in part, states [i]t shall be unlawful for any optometrist to render optometric care in any retail, mercantile establishment which sells merchandise to the general public[.]" Title 59 O.S. 944 (1981), in pertinent part, states:
 No person, firm, or corporation engaged in the business of retailing merchandise to the general public shall rent space, sublease departments, or otherwise permit any person purporting to do eye examination or visual care to occupy space in such retail store.
¶ 2 Also of importance is 59 O.S. 593 (1981), adopted by the Oklahoma Legislature and effective at the same time as 59 O.S.596. In 59 O.S. 593 the Legislature set forth the public policy concerning the practice of optometry, stating:
 It is the public policy of the State of Oklahoma that optometrists rendering visual care to its citizens shall practice in an ethical, professional manner; that their practices be free from any appearance of commercialism; that the visual welfare of the patient be the prime consideration at all times; and that optometrists shall not be associated with any nonprofessional person or persons in any manner which might degrade or reduce the quality of visual care received by the citizens of this state.
¶ 3 Where the language used in a statute is plain and unambiguous it is necessary to interpret the words used in their ordinary sense. Cave Springs Public School Dist. I-30 of AdairCounty v. Blair, 613 P.2d 1046 (Okla. 1980). Further, it is required that the interpretation use the plain intent of the Legislature. State ex rel. Cartright v. Georgia Pacific Corp.,663 P.2d 718 (Okla. 1982).
¶ 4 To respond to your request, the question of whether a retail optical outlet falls within the category of a "retail, mercantile establishment which sells merchandise to the general public" must first be addressed.
¶ 5 Black's Law Dictionary defines "retail" as "[a] sale for final consumption in contrast to a sale for further sale or processing (i.e., wholesale). A sale to the ultimate consumer." "Mercantile" is defined as "[o]f, pertaining to, or characteristic of, merchants, or the business of merchants; having to do with trade or commerce or the business of buying and selling merchandise." Black's Law Dictionary, Sixth Edition. See also, Webster's Third New International Dictionary (Unabridged, 1981). Moreover, in Williamson v. Lee Optical of Oklahoma,348 U.S. 483, 490, 75 S.Ct. 461, 99 L.Ed. 563 (1955), the United States Supreme Court recognized that eyeglasses are "merchandise."
¶ 6 Thus, under the plain language of the statutes, the phrases "retail mercantile establishment" and "person, firm, or corporation engaged in the business of retailing merchandise to the general public" apply to any retail establishment which sells retail goods to the public, including a retail optical outlet.
¶ 7 Having determined that a retail optical outlet falls within the category of "retail mercantile establishment," the next question which must be addressed is what activities between retail, mercantile establishment and a practicing optometrist are proscribed. In determing what type of relationships are prohibited, one must again look directly at 59 O.S. 596 (1981) and 59 O.S. 944 (1981).
¶ 8 It is an established rule of statutory construction that absurd results should be avoided. Oliver v. City of Tulsa,654 P.2d 607, 612 (Okla. 1982). Again, the cardinal objective of statutory construction is the determination of legislative intent. State v. Goforth, 772 P.2d 911, 914 (Okla. 1989).
¶ 9 Applying these rules of construction, a determination of the intended use of the conjunction "or" is of utmost importance. The provisions of 59 O.S. 946 (1981) direct that any entity violating the terms of 59 O.S. 944 is guilty of a misdemeanor, thus making 59 O.S. 944 penal in nature. The general rule is that the word "or" in a penal statute is seldom used other than as a disjunctive. Magness v. State, 476 P.2d 382, 383 (Okl.Cr. 1970).
¶ 10 59 O.S. 944 states a retailing merchandiser may not do three things:
1) rent space
2) sublease departments, or
 3) permit any person purporting to conduct visual care to occupy space in the retail store.
¶ 11 It is clear from the language of the statute that the word "or" as used in the phrase "no person . . . shall rent space, sublease departments or permit any person purporting to conduct visual care to occupy space in the retail store" was intended to apply disjunctively, thus giving to the statute the meaning that a retail mercantile establishment could not rent space to an optometrist for the purpose of practicing optometry, could not sublease departments to an optometrist nor could the retail mercantile establishment allow an optometrist to occupy any space, no matter what the terms, within the retail store for the purpose of practicing optometry. This interpretation is sup ported by the three separate phrases specifically placed in the statute. Furthermore, 59 O.S. 596, in part, states that "it shall be unlawful for any optometrist to render optometric care in any retail, mercantile establishment which sells merchandise to the general public." Had the legislature intended to limit this type of landlord/tenant situation only to the actual confines within a retail store, every such possibility could have been included under the simple wording "no person, firm, or corporation . . . shall . . . permit any person purporting to do eye examination or visual care to occupy space in such retail store." To reach an opposite conclusion would render the first two phrases nothing more than redundant language and therefore, unnecessary.
¶ 12 It is acknowledged that a number of states allow an optometrist to practice in a mercantile establishment or lease or sublease space from such commercial entity. Nevertheless, such allowances are generally specifically authorized by statute.See Florida, Fla. Stat. 463.014 (1991); Connecticut, Conn. Gen. Stat. 20-133a (1991); Texas, Tex. Health and Safety Code Ann. 4552-5.14 (1991). However, a number of states prohibit an optometrist from renting or leasing space from a mercantile establishment, including a retail optical outlet. See West Virginia, W. Va. Code, 30-8-10 (1986); Maine, Me. Rev. Stat. Ann. tit. 32, 2434 (1990).
¶ 13 Finally, the United States Supreme Court has recognized the importance of regulating the geographic locations of practicing optometry and the importance of regulating the relationship between an optometrist and a commercial entity. InWilliamson v. Lee Optical of Oklahoma, 348 U.S. 483,75 S.Ct. 461, 99 L.Ed. 563 (1955), the Supreme Court, in addressing the same statutory language as set forth in 59 O.S. 944 (1981), recognized Oklahoma's power to regulate the locale of a practicing optometrist, acknowledging a state's need to maintain strict professionalism. The Supreme Court stated:
 It seems to us that this regulation is on the same constitutional footing as the denial to corporations of the right to practice dentistry. Semler v. Oregon State Dental Examiners, supra, (294 US at 611). It is an attempt to free the profession, to as great an extent as possible, from all taints of commercialism. It certainly might be easy for an optometrist with space in a retail store to be merely a front for the retail establishment. In any case, the opportunity for that nexus may be too great for safety, if the eye doctor is allowed inside the retail store. Moreover, it may be deemed important to effective regulation that the eye doctor be restricted to geographical locations that reduce the temptations of commercialism. Geographical location may be an important consideration in a legislative program which aims to raise the treatment of the human eye to a strictly professional level. We cannot say that the regulation has no rational relation to that objective and therefore is beyond constitutional bounds.
Id. 348 U.S. 483, 490-91.
¶ 14 It is, therefore, the official opinion of the AttorneyGeneral that under the statutory provisions of 59 O.S. 596(1981) and 59 O.S. 944 (1981), a licensed optometrist maynot lease or sublease office space from a retail merchandiser,including a retail optical supplier or seller.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
WELLON B. POE ASSISTANT ATTORNEY GENERAL